IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02646-RBJ-KLM

DENNIS BURNS,

      Plaintiff,

v.

ANTHONY LEDRU, and
VICTORIA ALIANELLI,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [Docket No. 8; Filed October 12, 2012] (the "Motion"). On November 2, 2012, Plaintiff filed a Response [#10] opposing the Motion. Defendants filed a Reply [#13] on November 16, 2012. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for a recommendation regarding disposition [#23]. The Court has reviewed the Motion [#8], Plaintiff's Response [#10], Defendants' Reply [#13], the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#8] be **DENIED**.

### I.  Summary of the Case

Plaintiff Dennis Burns ("Plaintiff") married Ana Soledad Alianelli ("Ms. Alianelli") on

1

November 22, 2002.[1]  *Compl.* [#3] ¶ 5.  Defendant Victoria Alianelli ("Alianelli") is Ms. Alianelli's sister, and Defendant Anthony Ledru ("Ledru") is Defendant Alianelli's husband. *Final Orders* [#8-1] at 7, 14;  *Aff. of Austin* [#10-1] at 11.  Defendants have resided in New York since 2001.  *Motion* [#8] at 2.

During the marriage of Plaintiff and Ms. Alianelli, the couple had two children ("the Burns Children") and resided in Snowmass Village, Colorado, and Carbondale, Colorado. *Compl.* [#3] ¶¶ 6-7.  In August 2009, Plaintiff and Ms. Alianelli separated, and Plaintiff initiated divorce proceedings on or about August 9, 2009.  *Id.* ¶ 8.  On August 11, 2010, the Garfield County District Court (the "Garfield Court") determined that Plaintiff would be the "primary residential parent" of the Burns Children and ordered that their habitual residence would be with Plaintiff in Colorado.  *Compl.* [#3] ¶ 14; *Final Orders* [#8-1] at 19.

On October 5, 2012, Plaintiff filed a Complaint [#3] in the District Court of the City and County of Boulder alleging that Defendants interfered with Plaintiff's relationship with his two children, engaged in extreme or reckless conduct, and conspired to accomplish the unlawful goal of abducting the Burns Children and harboring them outside the United States, in Argentina.  *Compl.* [#3] ¶¶ 20-31.  On the same day, October 5, 2012, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants removed the case to this Court [#1].

Plaintiff's Complaint alleges that Defendants knew about the Garfield Court's order. *Compl.* [#3] ¶ 16.  He alleges that on or around September 4, 2010, using frequent flier miles, Defendants purchased airline tickets for Ms. Alianelli and the Burns Children to travel from Denver, Colorado, to Buenos Aires, Argentina, on September 9-10, 2010.  *Id.* ¶¶

---

[1]  Ms. Alianelli is not a party to the current suit.

16-17.  Ms. Alianelli and the Burns Children boarded the flight to Argentina and have not returned to Colorado.  *Id.* ¶ 18.  Plaintiff also alleges "upon information and belief" that Defendants have provided additional financial assistance to Ms. Alianelli, thereby enabling the abduction and delaying the return of his two children.  *Id.* ¶ 19, 22.

On October 12, 2012, Defendants responded to the Complaint with the instant Motion [#8].  The Motion seeks dismissal of Plaintiff's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  [#8] at 1.  Defendants assert that the Court does not have personal jurisdiction over them because "Plaintiff has failed to meet his burden of establishing jurisdiction through well-pleaded facts."  *Id.* at 1-2.  Defendants also assert that Plaintiff's allegation that Defendants acted with knowledge of the Garfield Court's Final Orders [#10-3] or with the intent to interfere with Plaintiff's parental rights are "conclusory and speculative [and] do not meet the standards of this Court . . .  for imposing personal jurisdiction."  *Id.* at 2.  Defendants claim that their "contacts with the state of Colorado have been minimal and do not rise to the level of minimum contacts necessary to establish jurisdiction over them in this state."  *Id.*  In the event that the Court deems the allegations sufficient for finding personal jurisdiction, Defendants request that the Court schedule an evidentiary hearing "for the purposes of determining the jurisdictional issue on the facts[.]"  *Id.*

In response, Plaintiff contends that dismissal of this case is unwarranted.  Plaintiff argues that Defendants are subject to this Court's personal jurisdiction because "the abduction of minor children from the State of Colorado constitutes both a crime and a tort in the State of Colorado."  *Response* [#10] at 2.  As such, Plaintiff asserts that the requirements of both the Colorado Long-Arm Statute, C.R.S.  § 13-1-124, and of due

process of the law have been met.  *Id.* at 9.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties.  After a motion to dismiss has been filed, the plaintiff bears the burden of establishing personal jurisdiction over the defendants.  *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984).  The Court accepts the well-pled allegations (namely the plausible, nonconclusory, and nonspeculative facts) of the operative pleading as true to determine whether the plaintiff has made a *prima facie*  showing that the defendants are subject to the Court's personal jurisdiction.  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court "may also consider affidavits and other written materials submitted by the parties." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004).  Any factual disputes are resolved in the plaintiff's favor.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).

## III.  Analysis

### A.    Request for Evidentiary Hearing

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Defendants.  *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the plaintiff need only make a *prima facie*  showing of personal jurisdiction to defeat the motion." *Id.*  (citations omitted).  "The plaintiff may make this *prima facie*  showing by

demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* at 1091. "In order to defeat a plaintiff's *prima facie* showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

At this stage, the allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor, and a *prima facie* showing of personal jurisdiction will be sufficient to overcome defendant's objection. *Id*; *see also Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

In this case, Defendants have had ample opportunity to present the Court with evidence regarding credibility issues, specific factual conflicts, and exhibits or affidavits which they believe would raise a question of fact. With the possible exception of whether the international plane tickets purchased by Defendants were round trip tickets, a fact ommitted from Plaintiff's account, the facts Defendants have presented are neither new nor in conflict with Plaintiff's facts. *Aff. of Ledru* [#13-1] at 10. Additionally, Defendants' request for an evidentiary hearing does not direct the Court's attention to any specific factual questions left undetermined by the briefs, and instead asks for a hearing only "for purposes of determining the jurisdictional issue on the facts[.]" *Motion* [#8] at 2. Considering the well-plead allegations of the Complaint, the lack of any disputed material fact raised by Defendants, and the requirement that the factual disputes, if any exist, must be resolved in Plaintiff's favor, the Court denies Defendants' evidentiary hearing request. *See Benton*,

5

375 F.3d at 1074-5.

## B.     Personal Jurisdiction

Plaintiff bears the burden of proving that jurisdiction exists by making a *prima facie* showing that the Court's exercise of personal jurisdiction over Defendants is proper. *Benton*, 375 F.3d at 1074;  *Impact Prods.*, 341 F. Supp. 2d at 1189.

The parties do not dispute that Defendants are not residents of Colorado.  *Notice of Removal* [#1] ¶ 7; *Compl.* [#3] ¶ 4.  In a diversity action, the Court may only exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of Colorado permits the exercise of personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *see also Dudnikov*, 514 F.3d at 1070; *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) ("To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state[.]"); *see Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990).

The jurisdiction of a district court over a nonresident defendant in a suit based on diversity of citizenship is determined by the law of the forum state. Fed. R. Civ. P. 4(e). *Wenz*,  55 F.3d. at 1506.  Therefore, the usual threshold question is whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state.  *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir.1982) ("Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state."); *see also* Fed. R. Civ. P. 4(e).

6

For the first step of the jurisdictional analysis, the Court turns to Colorado's long-arm statute, which establishes personal jurisdiction over defendants who, either in person or by an agent, engage in various activities within the state including the transaction of business and the commission of a tortious act. *See* Colo. Rev. Stat. § 13-1-124(1)(a)-(b).   The Colorado long-arm statute grants "specific jurisdiction" over a nonresident defendant when (1) a defendant has purposefully availed himself of the privilege of acting in Colorado or of causing important consequences in the state, (2) the cause of action arose in Colorado from the consequences of defendant's activities, and (3) the activities had a substantial enough connection with Colorado to make the exercise of jurisdiction over the defendant reasonable. *Encore Prod., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1116 (1999).

The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); *see Equifax*, 905 F.2d at 1357l; *see Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F.Supp. 541, 543 (D. Colo. 1995) (*citing Safari Outfitters, Inc. v. Superior Court*, 448 P.2d 783 (Colo. 1968)).   Accordingly, because a due process analysis of jurisdiction in this case will also satisfy Colorado's long-arm statute, the Court need only consider whether the exercise of personal jurisdiction over Defendants is permitted by the Due Process Clause.[2]

---

[2] Typically, the Court must first address the adequacy of service in making its determination of personal jurisdiction. *United States v. Elsberg*, No. 08-00522, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010).  Here, Defendants have not raised any issue relating to the sufficiency of service. [#8, #13]  Thus, the Court evaluates whether it may exercise personal jurisdiction over both Defendants assuming proper service.

*SCC Commc'ns Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002) ("[The] analysis turns on a single inquiry, whether the exercise of personal jurisdiction over [the defendant] comports with due process."); *Dudnikov*, 514 F.3d at 1070 ("[T]he first, statutory, inquiry effectively collapses into the second, constitutional, analysis.").

The Due Process Clause permits the exercise of personal jurisdiction when two conditions are met.  First, a defendant must have "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Second, if sufficient minimum contacts are shown, "the Due Process Clause requires that [the Court] further consider whether the exercise of personal jurisdiction over [the] defendant would nonetheless offend traditional notions of fair play and substantial justice."  *Impact Prods.*, 341 F. Supp. 2d at 1190.

### 1.    Minimum Contacts

Due process first requires that the defendant have "minimum contacts" with the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. at 316 (1945).  This requirement protects a defendant from "being subject to the binding judgment of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp*, 471 U.S. at 472 (1985) (citation omitted).  The defendant must have "fair warning that a particular activity may subject [him] to jurisdiction." *Id.*

Personal jurisdiction may be established either generally or specifically.  Depending on the level of contact, minimum contacts may be general, in which case jurisdiction is based upon "continuous or systematic contacts" between the defendant and the forum state, or it may be specific, in which case personal jurisdiction is based on specific activities or contacts the defendant has with the forum state. This Court has explained minimum

contacts as follows:

> The requisite minimum contacts exist if the nonresident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if *the defendant (i) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction).*

*Impact Prods.*, 341 F. Supp. 2d at 1190 (emphasis added).  In short, Defendants must have purposely established minimum contacts with the forum state such that they "should reasonably anticipate being haled into court" there.  *Burger King Corp.*, 471 U.S. at 474 (1985) (internal quotation omitted).

Plaintiff does not argue that Defendants have continuous and systematic contacts with Colorado sufficient to permit the Court to exercise general personal jurisdiction over them.  Plaintiff asserts, rather, that Defendants are subject to this Court's specific personal jurisdiction because they committed tortious acts within the State of Colorado.  *See Compl.* [#1] ¶ 4 ("Jurisdiction is proper in this Court pursuant to Colo. Rev. Stat. 13-1-124(1)(b) as the Defendants have committed tortious acts within the state.").  Thus, this Court applies the analysis for finding specific personal jurisdiction over Defendants.

### a.    Purposefully Directed

Nonresident defendants are subject to this Court's specific personal jurisdiction only when they have "purposefully directed activities at [Colorado] residents or otherwise acted to avail [themselves] purposefully of the privilege of conducting activities [in Colorado]." *Impact Prods.*, 341 F. Supp. 2d at 1190.  The aim of the "'purposeful direction' doctrine has been said by the Supreme Court to [be to] ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the

forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475). A defendant has "purposefully directed" her activities at Colorado or its residents when she has (1) taken intentional action, (2) that was expressly aimed at Colorado, (3) with the knowledge that the brunt of the injury from the action would be felt in Colorado. *Id.* at 1072; *see also Impact Prods.*, 341 F. Supp. 2d at 1190.

Plaintiff's Complaint states three separate claims for relief: 1) tortious interference with the parent-child relationship; 2) outrageous conduct; and 3) civil conspiracy. *Compl.* [#3] ¶¶ 20-31. Thus, the Complaint alleges the commission of *intentional* torts. *See Pace*, 780 P.2d at 525 (recognizing a complaint alleging tortious interference with the parent-child relationship as alleging the commission of an intentional tort); *see also Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003) ("The elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress."); *see also Magin v. DVCO Fuel Sys., Inc.,* 981 P.2d 673, 674-75 (Colo. App.1999) (recognizing that to establish a civil conspiracy, a plaintiff must show 1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result). With regard to the first element of purposeful direction, the Tenth Circuit has not determined "whether a defendant's intentional [action] must be wrongful or tortious or whether innocent intentional action suffices." *Sharpshooter Spectrum Venture, LLC v. Consentino*, No. 09-00150, 2009 WL 4884281, at *6 (D. Colo. 2009); *see Dudnikov*, 514 F.3d at 1073 (stating that a court can "avoid entering this thicket" when the complaint alleges wrongful intentional conduct). However, the Court need not decide the issue

10

because Plaintiff's claims of tortious acts are supported by the well-pled facts in Plaintiff's Complaint [#3 at 3-5], and adequately pled allegations must be accepted as true at this juncture. *See Dudnikov*, 514 F.3d at 1070. Accordingly, Plaintiff's Complaint has adequately established that Defendants took intentional action.[3]

The Court next considers whether Defendants' intentional actions were expressly aimed at Colorado. The "express aiming" test focuses on a defendant's intentions by asking "where was the 'focal point'" of her intentional action. *Id.* at 1075. The Tenth Circuit has adopted a restrictive approach to the "express aiming" test, holding that the forum state itself–and not merely a known resident of the forum state–must be the focal point of the defendant's intentional action. *Id.* at 1075 n.9. *See, e.g., Far West*, 46 F.3d at 1078; *see also Burger King*, 471 U.S. at 474 (foreseeability of non-forum resident causing injury in forum state not sufficient for exercise of personal jurisdiction)." Accordingly, Plaintiff "must present 'something more' than the injuries [he] allegedly suffered as a result of the . . . out-of-forum [conduct] in order to make out a *prima facie* case that [Defendants] expressly targeted [him] or Colorado through this conduct." *Impact Prods.*, 341 F. Supp. 2d at 1191

---

[3] Plaintiff alleges in his Response that where a complaint alleges the commission of an intentional tort, a further minimum contacts analysis is not required. *Response* [#10] at 11. This is not the case. Frequently, the commission of a tort in itself creates "a sufficient nexus between the defendant and the state so as to satisfy the due process inquiry." *Pace*, 780 P.2d at 524. In such cases there is no need to further engage in a minimum contacts analysis, because the defendant is so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction. *See, e.g., Jenner & Block*, 590 P.2d at 966; *Texair Flyers*, 506 P.2d at 438; *see also McAvoy v. Dist. Court*, 757 P.2d 633, 635 n.3 (Colo. 1988).

However, even if an injury is sustained in the forum state, in some cases the defendant's tortious acts may be "so remote as to require a closer nexus between the defendant and the state." *Pace*, 780 P.2d at 525. Here, because Plaintiff alleges the commission of an intentional tort, Defendants' actions must have been intended to cause injury within the forum state. In such a case, a court must engage in a complete minimum contacts analysis. *See, e.g., Scheuer v. Dist. Court*, 684 P.2d 249, 251 (Colo. 1984); *Fleet Leasing, Inc. v. Dist.Court*, 649 P.2d 1074, 1079 (Colo. 1982).

(citation omitted).

The Court notes that Plaintiff alleges facts beyond his mere injury in the forum state, including the existence of a "relocation agenda," the repeated presence of Defendants in the forum state in order to further the goal of relocating the children, and the Defendants' continued financial support of Ms. Alianelli's attempts to keep the children in Argentina. *Compl.* [#3] ¶ 12.  Though Defendants argue that these allegations require "a monumental leap to reach the conclusion that Mr. Ledru and Ms. Alianelli participated in a 'plot' to abduct the children," given the factual assertions of Plaintiff's complaint, it is plausible that Defendants, Ms. Alianelli's sister and brother-in-law, desired to and did assist Ms. Alianelli in transporting her children to Argentina.  *Reply* [#13] at 2.

Plaintiff contends that on February 2, 2010, Dr. William Austin ("Dr. Austin") interviewed both Defendants at Ms. Alianelli's residence in Colorado, after Defendants had traveled to Colorado for the purpose of meeting with Dr. Austin.  *Aff. of Austin* [#10-1] ¶ 7, 11.  According to his affidavit, Dr. Austin explained that "[Ms. Alianelli's] desire to move to Argentina reflect[ed] a family or group project to achieve this goal . . . [and that] the Defendants acted in concert with Ms. Alianelli and other family members to engage in . . . an "exercise of 'dad bashing,' in which the family members spoke 'almost in unison' and criticized Mr. Burns' 'behavior, personality, and parenting." *Compl.* [#3] ¶ 12; *see Aff. of Austin* [#10-1] at 11.  Plaintiff also submits an email from Defendant Alianelli to Plaintiff. *Aff. of Plaintiff* [#10-2] at 4.  In this email,  Defendant Alianelli discusses her opinion that Plaintiff was doing harm to the children by keeping them in Colorado.  *Id.*  Defendant Alianelli also claimed that the children "deserved a better future than you [Plaintiff] could give them." [#10-2] at 4.  Ms. Alianelli requested, after leaving the country with the Burns

Children, that her child support be paid to Defendant Alianelli in her absence so that Defendant Alianelli could send it to her in Argentina. *Order for Immediate Return* [#10-4] at 2-3. This evidence suggests that Defendants' actions were not only directed at Plaintiff, but at the forum state itself. These directed activities included using the Colorado judicial system to further a possible "relocation agenda" through participation in the Garfield Court divorce proceedings and a meeting with Dr. Austin, the court-appointed Child Family Investigator for the proceedings, to influence the custody outcome. *Response* [#10] at 4.

The Complaint also asserts three specific torts, asserting that each of these torts continues to cause injury in the State of Colorado, interfering with Plaintiff's relationship with his children and causing severe emotional distress. *Compl.* [#3] ¶¶ 20-31. The Court in *Pace* held that "where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the defendant and the state so as to satisfy due process." *Pace*, 780 P.2d at 525-26 *(interpreting Calder v. Jones*, 465 U.S. 783 (1984)). *Pace* involved a husband and wife from Colorado who filed for divorce. *Id.* at 521-22. During the divorce proceedings, the wife obtained a restraining order against the husband that prevented him from seeing the couple's son, and the husband kidnapped the son and went into hiding. *Id.* at 521. The husband's parents played an active role in concealing the whereabouts of the husband and son from the authorities, incurring several contacts with Colorado state agencies and residents. *Id.* at 521-23. There were also allegations that the husband's mother made threatening phone calls to Colorado and that the husband's father visited Colorado. *Id.* at 522. Finding that it was consistent with due process to subject the husband's parents to Colorado's jurisdiction, the Colorado Supreme Court held:

13

> The acts allegedly committed by the petitioners were directed at interfering with [the child's] relationship with his mother, avoiding the dictates of the Colorado restraining order, aiding in concealing [the child] from his legal custodian, and preventing his return to Colorado. Thus, *Colorado was the focal point of both the petitioner's actions and the effects of those actions.*

Id. at 525 (emphasis added).

Thus, although the long-arm statute of Colorado is presumed to be satisfied if the Due Process Clause is satisfied and the Court need not address the test for long-arm jurisdiction explicitly, the effects of the alleged tort are still pertinent to the minimum contacts analysis because they affect the determination of the *focal point* of the alleged actions. *See SCC Commc'ns Corp.*, 195 F. Supp. 2d at 1260; *Dudnikov*, 514 F.3d at 1070 ("[T]he first, statutory, inquiry effectively collapses into the second, constitutional, analysis."). Here, Plaintiff alleges tortious conduct with effects manifesting in the State of Colorado, making Colorado the focal point of the conduct for the purposes of minimum contacts analysis. *Compl.* [#3] ¶¶ 20-31. Together with facts previously discussed, these pleadings are sufficient to satisfy the "express aiming" test.

The analysis regarding purposefully directed activity also requires that the Defendants acted with the knowledge that the brunt of the injury from the action would be felt in Colorado. *Dudnikov*, 514 F.3d at 1071 ; *see also Impact Prods.*, 341 F. Supp. 2d at 1190. In support of this requirement, Plaintiff presents evidence of Defendants' participation in Dr. Austin's evaluation of the relative risks and benefits of custody with each parent, their participation in the divorce and custody proceedings, and an email from Defendant Alianelli. *Aff. of Austin* [#10-1] at 11,13; *Compl.* [#3] ¶ 11; *Aff. of Plaintiff* [#10-2] ¶ 6. On August 11, 2010, the Garfield Court, relying on Dr. Austin's evaluation, declared Plaintiff the primary residential parent. *Final Orders* [#8-1] at 18. Plaintiff asserts that

14

Defendants were fully aware of the contents of the Final Orders when they purchased the plane tickets, that Defendant Alianelli interjected herself into the parties' compliance with the Final Orders by attempting to quickly liquidate Ms. Alianelli's assets, and that Defendant Alianelli contacted Plaintiff by email in a way suggestive of knowledge of the Final Orders' custody dictates. *Aff. of Plaintiff* [#10-2] ¶ 6; *Final Orders* [#8-1] at 10. Further, Defendants do not deny that they have continued to financially support Ms. Alianelli and the Burns Children in Argentina, strengthening the claim that they have at least knowingly assisted Ms. Alianelli in harboring the children in Argentina in violation of the Order for Immediate Return. *See Response* [#10] at 16; *see also Order for Immediate Return* [#10-4] at 1-2. This evidence of knowledge of the Final Orders and of Plaintiff's lawful custody is enough to support Plaintiff's assertion that Defendants acted with knowledge or intent to remove the Burns Children from their father's custody, either temporarily or permanently, when they purchased the international plane tickets.

At this stage of the jurisdictional dispute, the Court must assume the truth of Plaintiff's well-pled allegations for the purpose of adjudicating the motion to dismiss. *See Dudnikov*, 514 F.3d at 1070. Such a conclusion must be plausible, not just "conceivable" or even "likely to be true." *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Here, Plaintiff's allegations support a plausible inference that Defendants intended to assist in the removal of the Burns Children from Plaintiff's legal custody, meeting the knowledge requirement of the test for purposeful direction.

### b.   Injuries arising from directed action

Once a plaintiff establishes that a defendant has purposefully directed action at the forum state, the plaintiff must establish that the injury for which he claims relief arose from

those actions. *Impact Prods.*, 341 F. Supp. 2d at 1190.  As noted, Plaintiff's Complaint states three separate claims for relief: 1) tortious interference with the parent-child relationship; 2) outrageous conduct; and 3) civil conspiracy.  *Compl.* [#3]  20-31.  He asserts that each of these torts continues to cause injury in the State of Colorado by interfering with Plaintiff's relationship with his children and causing severe emotional distress.  *Id.*   Here, the Plaintiff is a Colorado resident.  *Compl.* [#3] ¶ 1.  The Garfield Court declared Plaintiff the primary residential parent and ordered that his daughters' habitual residence would be with him in Colorado, entitling him to legal custody.  *Compl.* [#3] ¶ 14; *Final Orders* [#8-1] at 19.  The Colorado Supreme Court has recognized that an injury arising from unlawful interference with custody of a child from the State of Colorado manifests in Colorado, so the directed action requirement is met.  *See Pace*, 780 P.2d at 524-25.

The requirement "that the claim arises out of or results from the forum-related activities, is . . . not satisfied" when the plaintiff "would have suffered the same injury even if none of the [defendant's forum] contacts had taken place."  *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456-7 (10th Cir. 1996) (citing *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271-2 (9th Cir. 1995)).   In the case at hand, Plaintiff has alleged sufficient facts to suggest that Ms. Alianelli would have been unable, or at least less likely, to remove the children from Plaintiff's custody without the financial and emotional support of Defendants.  Specifically, the Final Orders of the Garfield Court noted that Ms. Alianelli was concerned about her ability to support the children if she stayed in Colorado, which suggests that she would have been financially unable to relocate the children without assistance.  *Final Orders* [#8-1] at 7.  Ms.  Alianelli also told the Garfield Court that if

16

Plaintiff was designated as the residential parent, she would stay in the area to facilitate contact with the children. *Id.* at 10, 12.   This is not a deciding factor, but the Court notes that in the context of her other financial concerns, this promise may also speak to her financial inability to move without assistance from Defendants.   More suggestive of financial difficulty is the fact that at the time of the divorce, Ms. Alianelli had no income, received few marital assets, and became responsible for high marital debts.   *Id.* at 11-12.   Her sister, Defendant Alianelli, expressed further concern for Ms. Alianelli's financial well-being in her email to Plaintiff, noting that the difference in what Plaintiff and Ms. Alianelli were seeking was that "the money [Ms.  Alianelli wanted] is really for them to survive[.]" *Aff. of Plaintiff* [#10-2] at 4.   In that email, Defendant Alianelli also wrote ". . . maybe you [Plaintiff] think that my widow mother, Anthony [Defendant Ledru] and I have to support them, and we are doing it just because we cannot sleep at night knowing how they are[.]" *Id.*   This evidence taken together is highly suggestive that Ms. Alianelli would have been financially unable to remove the Burns Children from Colorado without Defendants' assistance.   Combined with the additional evidence that Defendants have continued to provide financial assistance to Ms. Alianelli, thereby preventing the Burns Children's return to Plaintiff's legal and physical custody, the evidence is sufficient to suggest that the harms suffered by Plaintiff arose at least in part from Defendants' actions, and that but for Defendants' assistance, these injuries may not have come to pass. *Compl.* ¶ 19. Thus, the alleged injury arises sufficiently from Defendants' actions and manifests itself in Colorado.   *See, e.g., Pace*, 780 P.2d at 524.

       The Court therefore finds that Defendants had minimum contacts with the forum state of Colorado.

2.      **Fair Play and Substantial Justice**

The Court must next determine whether exercising jurisdiction over Defendants

"offend[s] traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F.

Supp. 2d at 1190.  The defendant's contact must be substantial enough so that exercising

personal jurisdiction "does not offend traditional notions of fair play and substantial justice."

*United States v. Botefuhr*, 309 F.3d 1263, 1271-72 (10th Cir. 2002) (citations omitted).  In

determining whether assertion of personal jurisdiction over a nonresident defendant

violates principles of fair play and substantial justice, courts are to consider (1) the burden

on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's

interest in receiving convenient and effective relief, (4) the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and (5) the shared

interest of the several states in furthering fundamental substantive social policies.  *Encore*

*Prod.*, 53 F. Supp. 2d 1101, 1118 (1999).

First, the Court's exercise of jurisdiction over Defendants would not create an undue

burden on Defendants.  "[I]t is only in highly unusual cases that inconvenience will rise to

a level of constitutional concern.  Certainly in this age of instant communication, and

modern transportation, the burdens of litigating in a distant forum have lessened." *Peay v.*

*Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (citations,

quotations, and footnote omitted).  Remembering also that Defendants have traveled to

Colorado in the past to assist with the divorce proceedings, apparently of their own volition,

this Court finds that requiring Defendants to travel from New York to defend this action in

Colorado would not create an undue burden.

Second, "[s]tates have an important interest in providing a forum in which their

residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc.*, 149 F.3d at 1096.  Although Defendants likely sent the alleged email and purchased plane tickets while in New York, the effects of these actions and communications were felt in Colorado.  *See Exhibit* [#13-1] at 10.  Accordingly, Colorado has an important interest in providing a forum for Plaintiff to seek redress for his injuries.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton*, 375 F.3d at 1079, and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute." *Id.* at 1080 (quotations and citation omitted).  In this case, Plaintiff could receive effective, albeit less convenient, relief in New York.  However, Colorado is the most efficient forum to litigate this dispute because Plaintiff resides in Colorado, Plaintiff apparently received all communications from Defendants in Colorado, and the out-of-state Defendants have shown the ability to travel to Colorado for legal proceedings in the recent past.  Therefore, the third and fourth factors weigh in favor of exercising personal jurisdiction over Defendants in Colorado.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id.* (quotations and citations omitted).  *Benton*, 375 F.3d at 1080.  Federal statutes concerning custody disputes reflect a general policy favoring litigation in the child's home state.  For example, the Uniform Child Custody Jurisdiction Act (1968), 9 U.L.A. Part I pp. 115-331 (1988), ("UCCJA") and the federal Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A, were designed to create predictability and stability in the law of interstate child custody jurisdiction by creating a preference for "home state jurisdiction," where the home

state had been the child's residence within 6 months before commencement of the proceeding and the child is absent from the state because of his removal or retention by a person claiming his custody or for other reasons, and where a parent continues to live in the state.  Minneman, "*Home State Jurisdiction of Court under § 3(a)(1) of the Uniform Child Custody Jurisdiction Act (UCCJA) or the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738a(c)(2)(a)"*, 6 A.L.R. 5th 1 (1992).  *See Eberhardt v. Eberhardt*, 672 F. Supp 464, 465 (D. Colo. 1987).  The UCCJA was promulgated in an effort to encourage courts considering child custody matters to cooperate in order to arrive at a fully informed judgment transcending state lines, to assist in the selection of an appropriate forum, to avoid interstate competition and conflict, and to deter unilateral removals of children from the states.  *See Barden v. Blau*, 712 P.2d 481, 485 (Colo. 1986) (recognizing "UCCJA's expressed goal of assuring that litigation concerning custody matters take place in the state with which the child and her family have the closest connection and where significant evidence concerning the child is available."); Coombs, "*Interstate Child Custody: Jurisdiction, Recognition, and Enforcement*," 66 Minnesota L. Rev. 711 (June 1982). These statutes suggest that there is a widespread policy to be served by allowing litigation in a child's home state.  Here,  since the conduct alleged in the Complaint took place primarily in Colorado and affected Colorado citizens, the Court is not persuaded that the exercise of personal jurisdiction in this case would unduly hinder the policy interests of New York.  Additionally, though Defendants hold dual citizenship, this case is unlikely to affect foreign policy interests. Therefore, exercising personal jurisdiction over Defendant in the home state of the Burns Children, where Plaintiff resides and was allegedly injured, may in fact further the policy interests of all states.

20

As all factors weigh in favor of exercising jurisdiction, the Court finds that exercising jurisdiction over Defendants in Colorado would not offend traditional notions of fair play and substantial justice.

Accordingly, the Court finds that it has personal jurisdiction over Defendants and recommends that the Motion [#8] be **DENIED**.

### IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' **Motion** [#8] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 5, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

21